UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| **LOUIS and DONNA DeSTEFANO, Individually and as the Natural Parents of BRITTANY LEIGH DeSTEFANO, and LOUIS DeSTEFANO, as the Personal Representative of the Estate of BRITTANY LEIGH DeSTEFANO,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | 4:04-CV-0076 |
| **ROBERT D. COCHRAN, JR., ROBERT COCHRAN, SR., BARBARA COCHRAN, BRIAN COCHRAN, CAROL SMITH, and DANIEL J. AND JENNY SMITH** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |
| **DANIEL J. SMITH and JENNY SMITH,** | ) ) | |
| **Third-Party Plaintiffs,** | ) ) | |
| v. | ) ) | |
| **COUNTRY MUTUAL INSURANCE COMPANY,** | ) ) | |
| **Third-Party Defendant.** | ) | |

**MEMORANDUM, OPINION, & ORDER**

This matter is before the Court on the Motion for Summary Judgment (Docket No. 161) filed by Third-Party Defendant Country Mutual Insurance Company on March 16, 2007 and the Motion for Summary Judgment (Docket No. 162) filed by Defendants Daniel J. Smith and Jenny Smith on March 16, 2007. The Court heard oral arguments in

Lafayette, Indiana on April 3, 2007, and the issues have been fully briefed.[1] For the reasons stated below, the Court grants in part the motion for summary judgment filed by Defendants Daniel J. and Jenny Smith and denies the motion for summary judgment filed by Third-Party Defendant Country Mutual.

I. Jurisdiction

Jurisdiction is conferred on this Court by 28 U.S.C. § 1323 in that there is diversity of citizenship between the parties and the amount in controversy exceeds $100,000.00.

II. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998). After affording the parties adequate time for discovery, a court must grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without

---

[1] The Court notes that these issues were also addressed, in part, at the final pretrial conference held before the Court on March 2, 2007 in Lafayette, Indiana, at which time the parties were granted leave to file summary judgment motions on coverage issues.

supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome-determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material, thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists. *Steen,* 2006 WL 335521 at *1 (7th Cir. Feb. 13, 2006); *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982. The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*,

3

477 U.S. at 252-55. The court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577 (1986). Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

III. Factual and Procedural Background

This lawsuit arises out of a jet ski accident on the Tippecanoe River that occurred on August 10, 2004, resulting in the death of Brittany DeStefano. (Pls.' Compl., para. 6-9; Pls.' Am. Compl.). Brittany DeStefano was the daughter of Plaintiffs Louis and Donna DeStefano. (Pls.' Compl., para. 1; Pls.' Am. Compl.).

Prior to August 10, 2004, Deborah and Michael Lichay (hereinafter "Debbie" and "Michael," respectively) along with their two daughters, Jamie Lichay (hereinafter "Jamie") and Jordan Lichay (hereinafter "Jordan") planned a trip from their home in New Jersey to Chicago, Illinois to visit Deborah's parents, Tom and Carol Smith (hereinafter "Tom" and "Carol," respectively).[2] Jordan requested that two of her friends, Brittany DeStefano (hereinafter "Brittany") and Tiana Kulik (hereinafter "Tiana"), join the Lichay family on this trip. (D. Lichay Dep., p. 28). Debbie Lichay became ill and could not

---

[2]Carol Smith is Daniel Smith and Debbie Lichay's mother and Jordan and Jamie Lichay's grandmother.

4

make the trip to Chicago. Instead, Jamie, Jordan, Brittany, and Tiana made the trip without Debbie or Michael Lichay. (See D. Lichay Dep., pp. 8-9). For the sake of clarity, the Court includes the following organizational charts to illustrate the relationships amongst the parties:

## The Smiths



## The Cochrans



Jordan, Jamie, Brittany, and Tiana arrived in Chicago and proceeded to Carol Smith's home. On the same date, Daniel and Jenny Smith (hereinafter collectively referred to as the "Smiths") visited Tom and Carol Smith's home.[3] (D. Smith Dep., pp. 20-21). Daniel Smith invited the four girls to visit a cottage on the Tippecanoe River in Buffalo, Indiana. The Cochran family cottage (also referred to as the "lake house") is owned by Jenny Smith's family and was titled in the names of Robert Cochran, Sr. and Barbara Cochran, and their two sons, Robert Cochran, Jr., and Brian Cochran. ®. Cochran, Jr. Dep., p. 9).[4] Jordan called her mother and asked for permission to go with her aunt and uncle, Jenny and Daniel Smith, to the Cochran family cottage[5] in Indiana. (D. Lichay Dep., pp. 15-16). Jordan's mother consented, and on August 9, 2004, the Smiths took Jordan, Jamie, Brittany, and Tiana to the Cochran family cottage. (D. Smith Dep., pp. 20-23, 59).

On August 10, 2004, Jordan called her mother to ask for permission to use the jet

---

[3]The Smiths are Jordan and Jamie Lichay's aunt and uncle.

[4]The Cochran family cottage was purchased in 2003, and Jenny and Daniel Smith helped the Cochran family move in during the weekend of September 1, 2003. Barbara Cochran gave Jenny Smith a key to the cottage. (B. Cochran Dep., pp. 23-24, 31, 69-70). The key provided Jenny Smith with entry to the cottage and attached garage, where the jet ski involved in the accident was stored.

[5]From May 1977 through July 1998, Robert Cochran, Sr. and Barbara Cochran owned a different lake cottage in Indiana. (B. Cochran Dep., pp. 10-11). Jet skis owned by various family members were kept at the first cottage, and Jenny Smith was free to use those jet skis without asking permission. Additionally, Robert Cochran, Sr. and Daniel Smith co-purchased and co-owned a boat, and Robert Cochran, Jr. and Daniel Smith co-purchased and co-owned Robert Cochran, Jr.'s first jet ski. (B. Cochran Dep., pp. 17-18, 33; J. Smith Dep., p. 17; R. Cochran Jr. Dep. pp. 8-10).

skis that were located at the cottage, and Debbie Lichay gave her consent. (D. Lichay Dep., pp. 17-18). Jenny Smith also consented to the use of the jet skis by the four girls, and the girls proceeded to use the jet skis with Jenny Smith's approval and permission. (J. Smith Dep., p. 27). Daniel Smith took Tiana out on a jet ski and permitted Tiana to operate the jet ski while he rode on the back. (D. Smith Dep., p. 30, 34). Daniel Smith then got off of the jet ski and helped Brittany get on the back of the jet ski Tiana was operating. (Jordan Lichay Dep., p. 45, ll. 3-12). Daniel Smith got on the second jet ski and followed Tiana and Brittany out toward the middle of the river. (Jordan Lichay Dep., p. 43, ll. 20-25; T. Kulik Dep., p. 27, ll. 21-25 and p. 28, ll. 1-2). Tiana and Brittany then switched places on the jet ski, such that Brittany began operating the jet ski with Tiana riding as a passenger on back. (T. Kulik Dep., p. 28). Thereafter, Brittany crashed the jet ski into a boatlift and sustained fatal injuries. (D. Smith Aff.).

On October 18, 2004, Louis and Donna DeStefano, individually and as the natural parents of Brittany Leigh DeStefano and as the personal representatives of the estate of Brittany Leigh DeStefano filed a complaint (Docket No. 1) against Daniel J. and Jenny Smith and Robert D. Cochran, Jr. The Plaintiffs amended their complaint (Docket No. 49) on April 17, 2006, adding Robert Cochran, Sr., Barbara Cochran, Brian Cochran, and Carol Smith as Defendants. Then, on September 21, 2006, Defendants/Third-Party Plaintiffs Daniel and Jenny Smith filed a third-party complaint for declaratory relief (Docket No. 120) against Third-Party Defendant Country Mutual Life Insurance

7

Company. And on September 29, 2006, Country Mutual Insurance Company filed a counterclaim and cross-claim for declaratory judgment (Docket No. 128) against Daniel and Jenny Smith, Carol Smith, Brian Cochran, Louis and Donna DeStefano, individually and as the natural parents of Brittany DeStefano, and Louis and Donna DeStefano, as the personal representatives of the estate of Brittany DeStefano. On October 16, 2006, Cross-Claim Defendant Brian Cochran, filed a corrected counterclaim (Docket No. 137) for declaratory judgment against Country Mutual Insurance Company.

On January 26, 2007, the Plaintiffs' claims against Brian Cochran, third-party plaintiff Country Mutual Insurance Company's crossclaim against Brian Cochran, and Brian Cochran's crossclaim against Country Mutual Insurance Company were dismissed. *See* Docket No. 149. Plaintiffs' complaint against Defendants Robert Cochran, Sr. and Barbara Cochran was dismissed on February 5, 2007. *See* Docket No. 153. And Plaintiffs' complaint against Defendant Carol Smith was dismissed on February 27, 2007. *See* Docket No. 157.

IV. The Country Mutual Insurance Policy

Country Mutual Insurance Company ("Country Mutual") issued a policy of insurance to Robert Cochran, Jr. for the period of January 18, 2004 to January 18, 2005. (*See* Exhibit A to Docket # 117). At the time of the accident, the jet ski operated by Brittany DeStefano was owned by Robert Cochran Jr. and was insured under this homeowners policy. (*See Id.*; Third Party Complaint ¶¶ 10-12). Robert Cochran, Jr.'s

8

insurance policy provided in relevant part:

> **SECTION 1**
>
> **Liability, Coverage A**
>
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or property damage" caused by an "occurrence" to which this coverage applies, "we" will:
>
> > **1.** Pay up to "our" limit of liability for damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured," and
> >
> > **2.** Provide a defense at "our" expense by counsel of "our" choice, even if the suit is groundless, false or fraudulent. "We" may investigate or settle any claim or suit that "we" decide is appropriate. "Our" duty to settle or defend ends when "our" limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.
>
> \* \* \*
>
> **DEFINITIONS (INCLUDES LIMITATIONS)**
>
> > A. In this policy, "you" and "your" refer to the person shown in the Declaration as INSURED and that person's spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance.
> >
> > B. In addition, these words and phrases in quotation marks are defined as follows:
>
> \* \* \*
>
> 7. "Insured" means:
>
> **a.** "You" [Robert Cochran, Jr.] and residents of "your" household who are:
>
> > **(1)** "Your" relatives; or
> > **(2)** Other persons under the age of 21 and in the care of any

9

>person named above;
>
> * * *
>
>**c.** Under **SECTION 1**
>
>>(1) With respect to animals, watercraft, or "recreational motor vehicles" to which this policy applies, any person or organization legally responsible for these animals, watercraft, or "recreational motor vehicles" which are owned by "you" or any person included in **a**. or **b**. above. "Insured" does not mean a person or organization using or having custody of these animals, watercraft, or "recreational motor vehicles" in the course of any "business" or without consent of the owner [Robert Cochran, Jr.]; (Brackets added).

V. <u>Discussion</u>

   A. *Choice of Law*

Because there is a genuine conflict between Illinois law and Indiana law as applied to this case, the decisive issue becomes the choice of law. It is well-settled that a federal court sitting in diversity jurisdiction is to apply the law of the forum state to determine applicable substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In *Klaxton Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), the Supreme Court amended this ruling to address conflicts in state law. The Court held that when there is a difference in the substantive laws of states involved in an action, such that the difference in the laws would affect the outcome of the case, the court is to apply the choice of law rule from the forum state. *Klaxton*, 313 U.S. at 496. *See also Griffin v. McCoach*, 313 U.S. 498, 506 (1941) (holding that the

10

forum state's choice of law principles governed whether public policy barred enforcement of a contract); *Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007).

"Indiana's choice of law rule for actions on contract, where the parties have not made an effective choice of law, calls for applying the law of the forum with the most intimate contacts to the facts." *American Employers Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1178 (Ind. App. 2005). The factors to be considered include: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and residence of the parties. *Allstate Ins. Co. v. Peterson*, No. 2:06-CV-61, 2006 WL 3833353 (N.D. Ind. December 18, 2006) (citing *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind. Ct. App. 1997)).

The parties do not contest that Illinois law should apply to the estoppel issue, and a review of the relevant factors suggests that Illinois law should govern. The applicable insurance policy was issued in Illinois, by an Illinois insurance company, to an Illinois citizen, and for an Illinois property.[6] *See* Country Mutual Policy, p. 1. Country Mutual is an Illinois corporation with its principal place of business in Indiana. And while the jet skis were stored in Indiana and the

---

[6] Robert Cochran, Jr.'s insurance policy principally insured a house in Illinois.

underlying accident took place in Indiana, Illinois has the most significant contacts with regard to the estoppel issue.  Therefore, the court finds that Illinois law applies to the issue of estoppel (e.g., whether Country Mutual wrongfully denied the Smiths a defense and coverage).[7]

### B. *Estoppel*

Defendants Daniel and Jenny Smith contend that Country Mutual is estopped from denying coverage or a defense to the Smiths.  Country Mutual asserts that it has no duty to defend the Smiths because the underlying complaint did not allege any facts that would bring the Smiths within the scope of potential coverage under Robert Cochran, Jr.'s policy.  This Court disagrees.

Under  Illinois law, "a liability insurer in doubt over whether it has a duty to defend its insured  'cannot simply stand on the sidelines and wait until the tort action is completed before contesting the issue of coverage.'" *Central Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806, 810 (Ill. App. Ct. 1991) (quoting *Reis v. Aetna Casualty & Surety Co.*, 387 N.E.2d 700, 704 (Ill. App. Ct. 1978).  Instead, an insurer taking the position that a complaint potentially alleging coverage is actually not covered under the insurance policy has two separate and distinct options: (1) the insurer may defend the suit under a reservation of rights; or (2) the

---

[7]The parties also have not made an effective choice of law with regard to the permissive use issue.  However, because this Court finds that estoppel applies, this Court need not determine the choice of law with regard to permissive use.

insurer may seek a declaratory judgment that there is no coverage. *Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc.*, 848 N.E.2d 597, 600-01 (Ill. App. Ct. 2006) (citing *State Farm Fire & Cas. Co. v. Martin,* 710 N.E.2d 1228 (Ill. 1999). Moreover, "[w]hen an insured tenders defense to an insurer, the insurer may not simply refuse to participate in the litigation and wait for the insured to institute litigation against the insurer to determine the insurer's respective rights and duties." *Shell Oil Co. v. AC & S, Inc*., 649 N.E.2d 946, 949 (Ill. App. 5 Dist. 1995). And if the insurer fails to either defend the suit under reservation of rights or seek a declaratory judgment that there is no coverage and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E. 2d 1122, 1135 (Ill. 1999). *See also Aetna Casualty & Surety Co. v. O'Rourke Bros., Inc*., 776 N.E.2d 588, 596 (Ill. App. Ct. 2002) ("When an insurer fails to seek a declaratory judgment . . . in a timely manner or defend under a reservation of rights, it has breached its duty to defend. The most important factor in determining whether an insurer has breached its duty to defend is not the raw chronological delay in an insurer's filing a declaratory [-] judgment action, but whether the insurer waited until trial or settlement was imminent.") (internal citations omitted).

      An "insurer has a duty to defend only when the complaint alleges facts

13

which bring the case within or potentially within the policy coverage." *Liberty Mut. Fire. Ins. Co. v. St. Paul Fire and Marine Ins. Co.,* 842 N.E.2d 170, 176 (Ill. Ct. App. 2005) (quoting *Hawkeye Security Ins. Co. v. Hodorowicz*, 406 N.E.2d 146 (Ill. App. Ct. 1980)). To determine whether an insurer has a duty to defend, the court should "compare the four corners of the underlying tort complaint with the four corners of the insurance policy and determine whether the facts alleged in the underlying complaint fall within, or potentially within, the insurance policy's coverage." *Pekin Ins. Co. v. Dial*, 823 N.E.2d 986, 990 (Ill. App. Ct. 2005). See also *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (Ill. 1991) (an insurer cannot safely or justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the claim is beyond the policy's coverage). Actual notice triggers the insurer's duty to defend, and actual notice includes knowledge that a cause of action has been filed and the complaint falls within or potentially within the scope of the policy coverage. *Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1138-39 (Ill. App. Ct. 2006). The allegations of the complaint must be construed liberally, with any doubts resolved in favor of the insured. *West American Ins. Co. v. Vago*, 553 N.E.2d 1181 (Ill. App. Ct. 1990).

The Country Mutual policy provided coverage as a potential insured as follows:

14

**7 c.**  Under **SECTION 1**

> (1) With respect to animals, watercraft, or "recreational motor vehicles" to which this policy applies, any person or organization legally responsible for these animals, watercraft, or "recreational motor vehicles" which are owned by "you" or any person included in **a**. or **b**. above.  "Insured" does not mean a person or organization using or having custody of these animals, watercraft, or "recreational motor vehicles" in the course of any "business" or without consent of the owner [Robert Cochran, Jr.]; (Brackets added).

(Country Mutual Policy, p. 3).   Moreover, the insurance policy states that "[i]f a claim is made or a suit is brought against an 'insured' for damages . . .[Country Mutual] will: (1) Pay up to 'our' limit of liability for the damages for which an 'insured' is legally liable."  (Country Mutual Policy, p. 5).

The DeStefanos filed suit on October 18, 2004, alleging that, on August 14, 2004, Robert Cochran, Jr. and Daniel J. and Jenny Smith assumed supervision and responsibility for Brittany DeStefano, that each of them knew or should have known the hazard and risk of injury associated with operating a jet ski, and that each of them permitted Brittany DeStefano [and others] to sue the jet skis.  (Pls.' Complaint ¶¶ 6-8). The Complaint further alleges that Robert Cochran, Jr. and Daniel J. and Jenny Smith negligently entrusted Robert Cochran, Jr.'s Yamaha jet ski to Brittany DeStefano and were each careless and negligent in their supervision, control, instruction of Brittany DeStefano and the other minors entrusted to their care.  (Pls.' Complaint ¶¶ 13, 16).  If Robert Cochran, Jr. and the Smiths engaged in the conduct alleged in the DeStefano's complaint, Robert

15

Cochran, Jr. was present at the scene of the accident and did give permission for others to use the jet ski. Accordingly, the DeStefanos alleged facts which bring this cause of action within or potentially within the coverage of the Country Mutual policy.

Country Mutual first had notice of a claim as early as October 14, 2004 when it sent Daniel J. Smith a Reservation of Rights letter. (Schaffer Dep.). In that letter, Country Mutual stated that Country Mutual acknowledged "the claim presented by you is for your defense and/or liability coverage for the bodily injury that occurred at Lake Shaffer, Indiana on August 10, 2004." (Schaffer Dep. pp. 129-133). Country Mutual further stated that it intended "to look closely into the facts of your claim" and advised that it could be determined that the loss is "not covered." (Schaffer Dep. pp. 129-133). However, after receiving the complaint in March of 2005, Country Mutual never again communicated with Daniel Smith, and Country Mutual never offered to defend either Daniel or Jenny Smith under reservation of rights.[8] (Schaffer Dep., p. 168). Jim Schaffer stated that as early as March 2005, Country Mutual was aware that there was a coverage issue regarding whether there was any consent or permission on the part of Daniel Smith or Jenny Smith to operate the jet ski. (Schaffer Dep. p. 26, ll. 24-25, p. 27, ll. 1.).

---

[8]Schaffer acknowledged that the DeStefano's complaint against Jenny Smith was identical to those allegations asserted against her husband, Daniel Smith. Yet, Country Mutual never sent Jenny Smith a Reservation of Rights letter. (Schaffer Dep. pp. 142-145).

16

Moreover, when Country Mutual received a tender of defense on behalf of Daniel and Jenny Smith in March of 2006, Country Mutual did not accept the tender for purposes of providing indemnification to the Smiths. Instead, Country Mutual agreed to share the defense costs of the Smiths with West Bend Mutual Insurance Company provided that the Smiths dismiss their claims [against Country Mutual] of waiver, estoppel, and bad faith. (Schaffer Dep. pp. 149-152).

With the Smiths facing impending litigation on a claim that might potentially fall within policy coverage and hence give rise to Country Mutual's duty to defend the Smiths, Country Mutual failed to either seek a declaratory judgment as to its rights and obligations before or pending trial or defend the Smiths under a reservation of rights. If Country Mutual believed it had a valid case of noncoverage, it should have taken appropriate action. Instead, Country Mutual waited until the Smiths filed a declaratory judgment action against Country Mutual. Accordingly, this Court finds that Country Mutual is estopped from arguing any defense or disputing the question of coverage. Because the Court finds that Country Mutual is estopped from arguing any coverage defenses, the Court need not discuss whether the Smiths were legally responsible for the use of the jet ski and had Robert Cochran, Jr.'s implied consent to use the jet ski.

    C.  *Attorneys Fees*

The Smiths contend that they are entitled to attorneys fees under 215 Ill.

17

Comp. Stat. 5/15 because Country Mutual's actions were vexatious and unreasonable. 215 ILCS 5/155 states in relevant part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorneys fees, other costs, plus [certain penalties]."

215 ILCS 5/155. The key question here is whether Country Mutual's conduct is vexatious and unreasonable. *Williams v. American Country Ins. Co.*, 833 N.E.2d 971, 982 (Ill. App. Ct. 2005). When deciding whether an insurer's conduct is vexatious and unreasonable, the court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover and whether the insured was deprived of the use of his property. *Baxter Intern., Inc. v. American Guarantee and Liability Ins. Co.*, 861 N.E.2d 263, 272 (Ill. App. Ct. 2006). And whether an insurer's conduct is vexatious and unreasonable is a matter committed to the trial court's discretion. *McGee v. State Farm Fire and Cas. Co.*, 734 N.E.2d 144 (Ill. App. Ct. 2000).

    The Smiths contend that Country Mutual not only failed to provide a defense under reservation of rights to the Smiths or file a declaratory judgment action upon receipt of the Complaint, but also took an exorbitant amount of time to even investigate the Smiths' claim for a defense or coverage. Smiths' Brief in

18

Response (Docket No. 169) at 11. The Smiths contend that Country Mutual waited until the Smiths filed a declaratory judgment in the underlying lawsuit. Smiths' Brief in Response (Docket No. 169) at 11. Specifically, the Smiths assert that Country Mutual, which was providing a defense to Robert Cochran, Jr., watched the litigation process against the Smiths for over eighteen months before taking any action.

Although section 5/155 provides for fees, the Seventh Circuit has made it clear that attorney's fees "may not be awarded simply because an insurer takes an unsuccessful position in litigation" and can only be awarded "where the evidence shows that the insurer's behavior was willful and without reasonable cause." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). An insurer is not deemed to have engaged in vexatious and unreasonable conduct if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law. *Id*. Here, Country Mutual is not deemed liable under Section 5/155. Even though Country Mutual is estopped from denying coverage because Country Mutual did not seek a judicial determination or defend the Smiths under a reservation of rights, such inaction by Country Mutual is not sufficient to show

that it acted unreasonably or vexatiously.

VI. Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Daniel J. and Jenny Smith (Docket No. 162) is **GRANTED in part** with respect to estoppel and **DENIED in part** with respect to the Smiths' request for attorneys fees and costs.  The Motion for Summary Judgment filed by Third-Party Defendant Country Mutual is **DENIED**.

**SO ORDERED.**

**DATED: May 29, 2007**

                                              **S/ ALLEN SHARP**
                              **ALLEN SHARP, JUDGE**
                              **UNITED STATES DISTRICT COURT**